UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRADLEY PAUL WILLIAMS<br><br>*Plaintiff,*<br><br>v.<br><br>WALDO COUNTY DEPUTY MERL REED;<br>BELFAST POLICE CHIEF MIKE<br>McFADDEN; WALDO COUNTY AND<br>CITY OF BELFAST<br><br>*Defendants.* | Case No. 16-cv-00211-DBH |

**BELFAST DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Rule 56, and the Court's Order dated April 27, 2017 (Do. No. 60), Defendants City of Belfast and Belfast Police Chief Mike McFadden (together, the "Belfast Defendants") hereby move for summary judgment as to all of Plaintiff's claims against them. As set forth below and in the accompanying Belfast Defendants' Statement of Undisputed Material Facts (hereinafter, "SMF"), Belfast Defendants contend that there are no genuine issues of fact precluding this Court from entering summary judgment in favor of Belfast Defendants as to all of Plaintiff's claims.

**MEMORANDUM OF LAW**

**BACKGROUND**

This case purportedly arises out of Plaintiff's alleged unlawful arrest on November 4, 2014.[1] Complaint (Doc. No. 1) at p. 6. Plaintiff alleges that he was unlawfully arrested after he mailed a court document to Mr. Fishman, who had previously obtained a restraining order

---

[1] To the extent Plaintiff attempts to rely on alleged arrests beginning in June 2016, these claims were not alleged in the Complaint and the Court denied Plaintiff's Motion to Amend to add these allegations. *See* Order on Plaintiff's Motion to Amend and Motion for Sanctions (Doc. No. 53).

against him. *Id.* at p. 3. Plaintiff further alleges that Belfast Defendants, along with Deputy Merl Reed and Waldo County (together, the "County Defendants") conspired to interfere with Plaintiff's civil rights. *Id.* Plaintiff also alleges that he was subjected to a year-long malicious prosecution arising from the alleged false arrest on November 4, 2014. *Id.*

Plaintiff's Complaint does not clearly articulate the claims being alleged against the Belfast Defendants. There are limited allegations directed specifically against Chief McFadden or the City of Belfast. From what Belfast Defendants can discern from the allegations in Plaintiff's Complaint, it appears that Plaintiff is trying to assert false arrest and excessive force claims pursuant to 42 USC § 1983 for a violation of his Fourth Amendment rights, a § 1985 conspiracy claim, and a municipal liability claim arising from his alleged arrest on November 4, 2014. *See id.* at pp. 3-4. Plaintiff also appears to allege a violation of his rights under the Fourteenth Amendment for "refus[ing] to provide vital police services" to him. *Id.* p. 5. Finally, Plaintiff attempts to assert state law tort claims of intentional infliction of emotional distress and malicious prosecution arising out of the November 4, 2014 arrest. *Id.* at p. 5-6. Based on that reading of the Complaint, Belfast Defendants seek summary judgment as to all of Plaintiff's claims against them.[2]

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[2] Undersigned counsel has attempted to read between the lines in a good faith effort to extrapolate all of the claims asserted against the Belfast Defendants as the Court would likely do. *See Boivin v. Black*, 225 F.3d 36, 42-43 (1st Cir. 2000) ("[C]ourts endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects."). If Plaintiff identifies additional claims being asserted against the Belfast Defendants that can reasonably be read from the allegations in the Complaint and not foreclosed by the Court's Order (Doc. No. 53), the Belfast Defendants reserve the right to address them in the first instance in their reply brief.

of law." Fed. R. Civ. P. 56(c); *Fabiano v. Hopkins*, 352 F.3d 447, 452 (1st Cir. 2003). A fact is "material" if it "has the potential to change the outcome of the suit." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters of Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (parallel quotation omitted). An issue is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." *Id*. (parallel quotation omitted).

The facts are viewed in the light most favorable to the non-moving party and the court draws all reasonable inferences in favor of the non-moving party. *Fed. Ins. Co. v. Commerce, Inc. Co.*, 597 F.3d 68, 70 (1st Cir. 2010). However, "[o]nce the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Napier v. Town of Windham*, 187 F.3d 177, 182 (1st Cir. 1999). The non-moving party must present "competent evidence and specific facts to stave off summary judgment." *Tropigas*, 637 F.3d at 56 (internal citations omitted). The non-moving party's "obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001).

## ARGUMENT

### I. THE BELFAST DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S § 1983 FALSE ARREST AND EXCESSIVE FORCE CLAIMS.

#### A. THE BELFAST DEFENDANTS NEVER ARRESTED PLAINTIFF ON NOVEMBER 4, 2014.

Plaintiff cannot establish liability against the Belfast Defendants for a Fourth Amendment violation under 42 U.S.C. § 1983 for a false arrest. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A Fourth Amendment violation actionable under section 1983 for an unlawful arrest necessarily requires a showing that there was a "seizure" of

3

Plaintiff. Within the meaning of the Fourth Amendment, a "seizure" of a person occurs when there is "meaningful interference, however brief, with an individual's freedom of movement." *United States v. Jacobsen*, 466 U.S. 109, 114, n.5, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85 (1984). *See also Horton v. California*, 496 U.S. 128, 133, 110 S. Ct. 2301, 2306, 110 L. Ed. 2d 112 (1990) ("[A] seizure deprives the individual of dominion over his or her person or property."); *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").

Plaintiff alleges that on November 4, 2014, he was unlawfully arrested for mailing a court document, and his section 1983 claims arise out of that alleged arrest. The undisputed facts reveal that there is no basis for Plaintiff's claims against the Belfast Defendants because there was no arrest or seizure of Plaintiff on that day by Chief McFadden or any other Belfast police officer. SMF ¶ 2, 4, 6. In fact, there is no record of Plaintiff being arrested or detained in any way by any Belfast Police officer, including Chief McFadden at any time during the year 2014. SMF ¶ 7. Even viewed in the light most favorable to the Plaintiff, there is no factual basis in the record for finding that Chief McFadden or any Belfast police officer arrested Plaintiff on or about November 4, 2014 or as alleged in his Complaint.

As a practical matter, the City of Belfast itself, a governmental entity, cannot be directly liable for allegedly falsely arresting an individual. Any claim that the City itself directly falsely arrested Plaintiff must fail as a matter of law. A municipality can be liable for Fourth Amendment violations in certain circumstances when its agents or employees commit constitutional violations, but only where the entity *itself* caused the constitutional violation at issue. *See Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978); *City of*

*Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Liability on the part of a municipality cannot attach based on a theory of *respondeat superior* or vicarious liability. *Harris*, 489 U.S. at 385. There was no "seizure" of Plaintiff by Chief McFadden or any Belfast police officer, and therefore no underlying Constitutional violation by a City employee which arguably was caused by the City itself. Under these undisputed facts, Plaintiff's Fourth Amendment claims for false arrest against the Belfast Defendants fail as a matter of law.

      B.  THE BELFAST DEFENDANTS DID NOT USE ANY FORCE AGAINST PLAINTIFF ON NOVEMBER 4, 2014.

Plaintiff alleges that he sustained injuries during his alleged arrest on November 4, 2014. For example, Plaintiff claims that he "received a visible scar on his right wrist from the handcuffs." Complaint at p. 6. Plaintiff's claim of excessive force is based on his alleged November 4, 2014 arrest. As a practical matter, it is nonsensical for Belfast Defendants to be liable for excessive force arising out of an arrest that they did not execute or participate in. Of course, there are circumstances when a police officer may have an affirmative duty to intervene to prevent an alleged use of excessive force by another officer, even if he or she does not personally participate in an arrest or use any force, *see Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir.1990), but Plaintiff has not alleged, nor is there any basis for so-called "bystander liability." The undisputed record shows that Chief McFadden did not use any amount of force against Plaintiff on or about November 4, 2014 because he had no interaction with him on or near that date. SMF ¶¶ 3-4. No other Belfast police officers used any amount of force against Plaintiff on or about November 4, 2014. SMF ¶ 3, 6. *See also Calvi v. Knox Cty.*, 470 F.3d 422, 429 (1st Cir. 2006) ("Absent evidence of participation, concerted action, or at least culpable knowledge, one officer cannot be held jointly liable under section 1983 for another officer's use of excessive force"). There is no record that the Belfast Police Department or any

5

Belfast police officer detained, questioned, or was dispatched to a call for service concerning Mr. Williams on or about November 4, 2014.  SMF ¶ 6.

Similar to the discussion above, as a practical matter, the City of Belfast itself, a governmental entity, cannot be directly liable for allegedly using excessive force against an individual.  Plaintiff's claim that the City itself used excessive force against him must fail as a matter of law. Plaintiff's municipal liability claims against the City are addressed below, but any claim that the City directly used excessive force fails as a matter of law because a municipality cannot use physical force against an individual and municipalities are not vicariously liable for the acts of their employees.  Because no Belfast police officer used any force against Plaintiff, there also is no underlying Constitutional violation by a City employee that arguably was caused by the City itself.  Accordingly, Belfast Defendants are entitled to summary judgment on Plaintiff's excessive force claims.

## II. PLAINTIFF'S MUNICIPAL LIABILITY CLAIMS FAIL AS A MATTER OF LAW

### A. THERE WAS NO UNDERLYING CONSTITUTIONAL VIOLATION BY A BELFAST POLICE OFFICER.

In order to establish municipal liability against the City of Belfast, Plaintiff would need to prove the commission of an underlying constitutional violation by Chief McFadden or another Belfast police officer.  *See Estate of Bennett v. Wainwright*, 548 F.3d 155, 177-78 (1st Cir. 2008); *Norton v. City of South Portland,* 831 F.Supp.2d 340, 366 (D.Me.2011).  No other Belfast police officers were named as defendants in this action.  There is, however, "nothing to prevent a plaintiff from foregoing the naming of an individual officer as a defendant and proceeding directly" against the municipality.  *Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002). The City, however, cannot face municipal liability if the actions of its officers did not violate Plaintiff's constitutional rights.  *Id.* at 6-7 ("If, however, the officer has inflicted no constitutional

6

harm, neither the municipality nor the supervisor can be held liable."). For the reasons discussed fully above, there was no underlying constitutional violation by Chief McFadden or any Belfast police officers. It is undisputed that neither Chief McFadden, nor any other Belfast police officer arrested or used any force against Plaintiff on or about November 4, 2014. SMF ¶¶ 2-6. Since no Belfast police officer inflicted a constitutional injury on Plaintiff, the municipal liability claims against the City must fail as a matter of law. *See Calvi v. Knox Cty.*, 470 F.3d 422, 429 (1st Cir. 2006) ("[I]t is only when a governmental unit's employee inflicts a constitutional injury that the governmental unit can be held liable under section 1983"); *Estate of Bennett*, 548 F.3d at 177 ("The establishment of § 1983 liability against either [the Town] or the County would ultimately depend on plaintiff proving the commission of an underlying constitutional violation by the subordinate officers.").

B. PLAINTIFF CANNOT MEET THE STANDARD FOR MUNICIPAL LIABILITY.

Even if there is a question of fact as to whether there was an underlying constitutional violation by a Belfast officer, which Belfast Defendants strongly contend there is not, Plaintiff cannot, as a matter of law, meet the standard for municipal liability.

Governmental entities can be held liable under Section 1983 for constitutional violations committed pursuant to an unconstitutional custom, policy or practice, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978), but such liability exists "only where [the entity] *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). The First Circuit has explained that:

> The Supreme Court, concerned that municipal liability based on fault by the City might collapse into de facto *respondeat superior*, has set a very high bar for assessing municipal liability under *Monell*. The alleged municipal action at issue must constitute a "policy or custom" attributable to the City. Further, the Supreme

7

> Court has imposed two additional requirements: 1) that the municipal policy or custom actually have caused the plaintiff's injury, and 2) that the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as "deliberate indifference."

*Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir.2005) (citations omitted).

Here, Plaintiff alleges that the City, the police department and their supervisors are "responsible for protecting the physical safety of the persons and property in Belfast, including the Plaintiff." Complaint at p. 3, ¶ E. Even given a generous reading, Plaintiff's Complaint alleges a vicarious liability claim at best. However, there is no section 1983 liability based on vicarious liability. *Harris*, 489 U.S. at 385. Plaintiff has not alleged that the City had in place an unconstitutional custom, policy or practice. Even viewed in the light most favorable to Plaintiff, the undisputed facts demonstrate that the Belfast Police Department had in place appropriate policies, including a policy regarding the use of force in effecting arrests. SMF ¶ 16. There is also no evidence of any pervasive failure to train Belfast police officers in the implementation of those policies. The only record evidence is to the contrary. Police officers employed by the City are required to obtain certification from the Maine Criminal Justice Academy, which requires training in areas such as lawful arrest procedures and the lawful use of force. SMF ¶¶ 12-14. Belfast police officers also receive additional training, including training covering topics mandated by the MCJA. SMF ¶ 15. The Belfast Police department has appropriate policies and procedures in place and all Belfast police officers receive training regarding those policies. SMF ¶¶ 16-17.

Plaintiff has not presented a scintilla of evidence supporting his municipal liability claim. As demonstrated by the undisputed factual record, Plaintiff cannot support a finding of "deliberate indifference" on the part of the City of Belfast. Plaintiff's conclusory allegations and speculation, unsupported by the factual record, are insufficient to survive a motion for summary

judgment. *See Estate of Bennett*, 548 F.3d at 177-78. Accordingly, the Belfast Defendants are entitled to summary judgment as to any municipal liability claim

### III. THERE IS NO GENERAL DUTY TO PROTECT UNDER THE FOURTEENTH AMENDMENT.

Plaintiff alleges that Belfast Defendants were responsible for protecting him and "refused to provide vital police services" to him. *See* Complaint at p. 3 & 5. To the extent these allegations can be read as a Fourteenth Amendment due process claim, the claim must fail as a matter of law. There is no generalized constitutional duty to protect or provide police services. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196-97 (1989) ("[T]he Due Process Clause does not require the State to provide its citizens with particular protective services."). The Due Process Clause is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* There is no Fourteenth Amendment Due Process right to police services, "even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196.

In *DeShaney*, the Supreme Court held that "a State's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause." *Id.* at 197 (rejecting the argument that "special relationship" created by the State imposed affirmative obligation on the State to provide adequate protection to child from actions of his father). *DeShaney* left open the possibility that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198-200. However, any affirmative duty to protect "arises not from the State's knowledge of the individual's predicament or from expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf . . . through

9

incarceration, institutionalization, or other similar restraint of personal liberty." *Id.* at 200.  It is the "State's affirmative act of restraining the individual's freedom to act on his own behalf . . . which is the deprivation of liberty triggering the protections of the Due Process Clause, *not its failure to act to protect his liberty interests against harms inflicted by other means*." *Id.* (emphasis added).

Here, Plaintiff was never in the custody of any Belfast police officer or the Belfast Police Department on or about November 4, 2014, so there was no affirmative constitutional duty on the part of Belfast Defendants to protect him.  Plaintiff cannot create an affirmative constitutional duty where none exists.  Accordingly, Plaintiff's Fourteenth Amendment due process claim cannot advance as a matter of law.  Even if there was an affirmative constitutional generalized duty to provide police services, the undisputed factual record demonstrates that the Belfast Police Department did provide Plaintiff with police services.  The Belfast Police Department has responded to every call for service made my Mr. Williams, including responding to at least twenty-five calls since 2013 that were initiated by Mr. Williams.  *See* SMF ¶ 18-19.

### IV.  SUMMARY JUDGMENT IS APPROPRIATE ON THE CONSPIRACY CLAIM.

Plaintiff cannot establish liability against Belfast Defendants for a conspiracy to violate his civil rights.  A conspiracy to commit a civil rights violation consists of

> a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an over act that results in damages.

*Comfort v. Town of Pittsfield*, 924 F. Supp. 2d 1219, 1229 (D. Me. 1996) (citations omitted).  *See also* 42 U.S.C. § 1985.  In order for Plaintiff's conspiracy claim to be actionable under § 1985, besides the agreement, there must be "an actual deprivation of a right secured by the Constitution

and law." *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988) (quoting *Landrigan v. City of Warwick,* 628 F.2d 736, 742 (1st Cir.1980)).  For the reasons discussed fully above, Belfast Defendants are entitled to summary judgment on Plaintiff's Fourth and Fourteenth Amendment claims.  Without an underlying civil rights violation, Plaintiff's conspiracy claims pursuant to § 1985 must fail.  Furthermore, there is no record evidence from which a fact finder could conclude that Defendants made an agreement to interfere with Plaintiff's civil rights.  The lack of agreement precludes Plaintiff's recovery on a conspiracy claim and summary judgment is appropriate.

### V. BELFAST DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO ALL OF PLAINTIFF'S STATE LAW TORT CLAIMS.

#### A. PLAINTIFF FAILED TO COMPLY WITH THE NOTICE PROVISIONS OF THE MAINE TORT CLAIMS ACT.

To the extent Plaintiff's Complaint alleges state law tort claims, Belfast Defendants are entitled to summary judgment because Plaintiff failed to comply with the notice provisions of the Maine Tort Claims Act.  *See* 14 M.R.S. § 8107.  Plaintiff was required to file a written notice of claim within 180 days after his claim or alleged cause of action accrued.  *Id.* at § 8107(a). Plaintiff's Complaint arises from an alleged false arrest on November 4, 2014. Neither the Belfast Police Department nor the City of Belfast received any notice of Plaintiff's claims until this lawsuit was filed on or about April 21, 2016.  SMF ¶ 20.  Thus, Plaintiff's claims are barred for failing to comply with the notice provisions provided under the Maine Tort Claims Act.  *Id.* at § 8107(4).

#### B. PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE FOR HIS STATE LAW CLAIMS.

Plaintiff's Complaint appears to allege state law tort claims of malicious prosecution and intentional infliction of emotional distress arising out of Plaintiff's alleged arrest on November 4,

11

2014. *See* Complaint at pp. 5-7. Even viewed in the light most favorable to Plaintiff, based on the undisputed record, Plaintiff cannot establish a *prima facie* case for each element of the state law tort claims. *See Estate of Smith v. Salvesen*, 2016 ME 100, ¶ 18, 143 A.3d 780, 786 ("To successfully oppose a motion for summary judgment, 'the plaintiff must establish a *prima facie* case for each element of [his or] her cause of action.") (quoting *Bell v. Dawson*, 2013 ME 108, ¶ 15, 82 A.3d 827); *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759, 763 ("In order to survive summary judgment, a plaintiff in a tort case must point to evidence in the record to support each element of his or her claim.").

To establish a *prima facie* claim for malicious prosecution claim, Plaintiff must show that the defendant: "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013) (internal quotation marks omitted). As discussed fully above, since there was no seizure of Plaintiff by Chief McFadden or any Belfast police officer, Plaintiff's malicious prosecution claim fails as a matter of law. There is also nothing in the record to show that any criminal proceedings were terminated in Plaintiff's favor.

Plaintiff also cannot make out a *prima facie* claim for intentional infliction of emotional distress. A claim for intentional infliction of emotional distress requires that the defendant: (1) intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;" (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "so severe that no

reasonable [person] could be expected to endure it." *Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18, 22–23.

Here, Plaintiff only alleges that he suffered psychological and emotional trauma from having his name in the paper.  Complaint at p. 6.  There is nothing in the record to support a claim for severe emotional distress.  Having one's names in the paper does not rise to the level of "extremely intense" emotional distress or outrageous conduct that is "so intense that no reasonable person would be expected to endure it."  *See Lyman v. Huber*, 2010 ME 139, ¶ 23, 10 A.3d 707, 713 ("[W]hen, as here, the existence of the fourth element cannot be inferred from the extreme and outrageous nature of the defendant's conduct alone, a plaintiff must prove that that [his] emotional distress was so severe as to have manifested objective symptoms demonstrating shock, illness, or other bodily harm."). In most cases, expert testimony is required to establish that plaintiff's emotional injury qualifies as severe enough to meet the standard for recovery.  *Id.* ¶ 23 ("[A] plaintiff must prove that [his] emotional distress was so severe as to have manifested objective symptoms demonstrating shock, illness, or other bodily harm. We do not preclude the possibility that this can be achieved without the corroborating testimony of an expert medical or psychological witness. That possibility is, however, remote.").  Here, Plaintiff never designated an expert, nor provided any objective evidence of his alleged emotional distress.  Based on the undisputed record, Plaintiff cannot establish a *prima facie* case of severe emotional distress, a necessary element of the tort.

Most importantly, Plaintiff's state law tort claims fail as a matter of law because there is nothing in the record to establish causation.  As noted above, causation is a necessary element in a cause of action for both torts.  In order to establish a *prima facie* claim for intentional infliction of emotional distress and malicious prosecution, there has to be a causal connection between

Plaintiff's alleged injuries and the alleged tortious conduct of Belfast Defendants. Plaintiff cannot, as a matter of law, establish causation because Belfast Defendants were not involved in the alleged arrest on or about November 4, 2014 that gave rise to his alleged injuries. If "there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff," then the defendant is entitled to summary judgment. *Salvesen*, 2016 ME 100, ¶ 21. Here, there is insufficient evidence for a jury to reasonably find or infer that there was a causal connection between Plaintiff's alleged damages and the actions of Belfast Defendants. There has to be proof that "there is some reasonable causal connection demonstrated in the record between the act or omission of the defendant and the damage that the plaintiff has suffered." *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 17, 60 A.3d 759, 763. Here, there is no evidence that Belfast Defendants actions or omissions were the cause of the Plaintiff's alleged injuries because Belfast Defendants were not involved in the alleged arrest that gave rise to his alleged injuries. Here, a jury could not find proximate cause without "speculation or conjecture" and therefore Belfast Defendants are entitled to summary judgment as a matter of law. *See id.* ¶ 19.

C. THE CITY IS ABSOLUTELY IMMUNE UNDER THE MAINE TORT CLAIMS ACT.

Even if there was a dispute of fact about whether Plaintiff can make out a *prima facie* case for his state law tort claims, the City is absolutely immune from liability. Plaintiff's state law tort claims are governed by the Maine Tort Claims Act ("MTCA"). *See* 14 M.R.S.A. §§ 8101, *et seq.* The MTCA begins with a broad grant of governmental immunity from tort claims: "Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S.A. § 8103. For

14

purposes of immunity under the MTCA, a governmental entity includes "political subdivisions," such as a city or town. 14 M.R.S. § 8102(2), (3). Defendant City of Belfast is a "governmental entity" within the meaning of the MTCA. Section 8104-A sets forth the limited exceptions to governmental entity immunity, including (1) ownership, maintenance, and use of vehicles, machinery, and equipment; (2) public buildings; (3) discharge of pollutants; (4) road construction, street cleaning or repair. *See* 14 M.R.S.A. § 8104-A. In interpreting the exceptions to immunity, courts "start with the premise that immunity is the rule and exceptions to immunity are to be strictly construed." *New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 5, 728 A.2d 673. *See also Estate of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 8, 997 A.2d 84, 87 (recognizing that "the MTCA employs an exception-to-immunity approach rather than an exception-to-liability approach.") (internal citations omitted).

Plaintiff's state law tort claims against the City must fail as a matter of law because none of the alleged acts of the City implicates a duty owed or conduct that falls within the enumerated exceptions to governmental liability. *See* 14 M.R.S.A. § 8103, 8104-A. There is no traditional vicarious liability available against governmental entities as employers, other than under § 8104-A. The liabilities and immunities of the entity are entirely distinct from that of its employees under the MTCA, which has entirely supplanted Maine's common law, including an employer's vicarious liability for the acts of its employees. *Compare* 14 M.R.S.A. §§ 8103-8104-B *with* § 8111.

Moreover, the City has not waived its state tort immunity through the purchase of any policy of liability insurance. *See* 14 M.R.S.A. § 8116 ("If the insurance provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage."); SMF ¶¶ 22-24. As a

member of the Maine Municipal Association Property & Casualty Pool ("MMA"), a self-insured municipal risk pool, the City's coverage is limited to areas where the City is not immune. SMF ¶¶ 22-23. This Court has previously considered identical coverage with the MMA, and has concluded that it did not constitute a waiver of immunity. *See, e.g. Steeves v. City of Rockland*, 600 F. Supp. 2d 143, 180 (D. Me. 2009), *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1237-38 (D. Me. 1996).

>   Here, the City of Belfast's member coverage certificate provides:

> > Coverage is limited to those areas for which immunity has been expressly waived by 14 M.R.S.A. 8104-A, as limited by 14 M.R.S.A. 8104-B, and 14 M.R.S.A. 8111. . . . Liability coverage shall not be deemed a waiver of any immunities or limitation of damages under the Maine Tort Claims Act, other Maine statutory law, judicial precedent, or common law.

SMF ¶ 23 and Slocum Affidavit at Ex. A p. 2. The above language is identical to the language considered by this Court in *Steeves* and *Comfort* and found not to waive immunity. *See Steeves*, 600 F. Supp. 2d at 180; *Comfort*, 924 F. Supp. At 1237-38. The City of Belfast has not waived its immunity under the Maine Tort Claims Act, and Plaintiff's state tort claims are barred as a matter of law.

Because Plaintiff's claims do not fall within the narrow and strictly construed exceptions to the grant of immunity under the MTCA, and because the City has not procured liability insurance that would provide it coverage where it is otherwise immune, the City is entitled to summary judgment on all of Plaintiff's state law tort claims against it.

## CONCLUSION

Based on the foregoing, Belfast Defendants respectfully request that this Court enter summary judgment in their favor as to all of Plaintiff's claims against them.

DATED at Portland, Maine this 3rd day of May, 2017.

                */s/ Kasia S. Park*
                Edward R. Benjamin, Jr.
                Kasia S. Park
                Attorneys for Belfast Defendants

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
ebenjamin@dwmlaw.com
kpark@dwmlaw.com

## **CERTIFICATE OF SERVICE**

I, Kasia S. Park, attorney for Belfast Defendants, hereby certify that on this 3rd day of May, 2017, I electronically filed the above Belfast Defendants' Motion for Summary Judgment with Incorporated Memorandum of Law using the CM/ECF system ECF system which will send notification of such filings(s) to all parties of record.  I further certify that copies of the above documents have been provided to Plaintiff via U.S. mail, postage prepaid, at the following address:

> Bradley Paul Williams
> 58 City Point Road
> Belfast, ME  04913
> *Pro Se Plaintiff*

>                                        */s/ Kasia S. Park*
>                                        Kasia S. Park
>                                        *Attorney for City of Belfast and*
>                                        *Belfast Police Chief Mike*
>                                        *McFadden*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
kpark@dwmlaw.com