UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

BRADLEY PAUL WILLIAMS,

          Plaintiff,

   vs.

WALDO COUNTY, et al.,

         Defendants

Civil No. 16-0211-DBH

## COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7, Defendants Waldo County and Merl Reed ("the County Defendants"), by and through counsel, hereby move for summary judgment on all claims in Plaintiff Bradley Paul Williams' Complaint. Based upon the undisputed facts taken in the light most favorable to Plaintiff, Plaintiff cannot make out viable claims for any constitutional violations against the County Defendants. In addition, Mr. Reed is protected from liability for his actions by qualified immunity. For these reasons, all of which are discussed below, the County Defendants are entitled to summary judgment on all claims in Plaintiff's Complaint.

## BACKGROUND

### I.    Facts

The backdrop to this Motion for Summary Judgment is the utter lack of any credible evidence to support any of the Plaintiff's operative assertions. In his Complaint, the Plaintiff alleges that he was arrested "at the behest of a notorious unprosecuted sex offender." (Docket Entry No. 1, ¶ II(B)). The only date mentioned in the Complaint involving an alleged arrest of the Plaintiff is November 4, 2014. (Docket Entry No. 1, ¶ III(K)). The Complaint does not

specifically allege that Mr. Reed or any other Waldo County Sheriff's deputy arrested the Plaintiff or otherwise violated the Plaintiff's rights.

In the face of the Complaint's vague and rather wild allegations, the Defendants served the Plaintiff with interrogatories seeking the pertinent details. When asked to provide information concerning the circumstances of his alleged arrest on November 4, 2014, the Plaintiff responded:

> Because all memory is faulty at best, the Plaintiff would defer to the audio and video tapes in the possession of the police Defendants. Every moment during this time frame is ostensibly recorded via AV body cams, vehicle cams and the surveillance cameras at the jail. This would provide the only completely reliable witness to the events and would preclude any faulty memory of the old Plaintiff as being misconstrued as perjury. Lack of said AV materials would constitute destruction of evidence by the Defendants.

(Pl's Interrog. Ans. ¶ 7). When asked to provide details as to the conduct of each defendant that resulted in the violations he has alleged, the Plaintiff did not identify anything done specifically by Mr. Reed or any other Waldo County Sheriff's deputy. (Pl's Interrog. Ans. ¶¶ 8-12). In short, discovery has revealed no credible factual basis for the assertions in the Plaintiff's Complaint.

The County Defendants have set forth the factual background for the Motion for Summary Judgment in the accompanying Statement of Material Facts, which is hereby incorporated by reference.

## II.   Procedural Posture

The Plaintiff commenced this action in the United States District Court for the District of Maine by a Complaint dated April 20, 2016. The Complaint appears to assert several claims against the County Defendants pursuant to 42 U.S.C. § 1983, including claims based on the following alleged violations: unlawful arrest and malicious prosecution; violation of 18 U.S.C. § 242 for deprivation of rights for "armed kidnapping [of Plaintiff] in chains at night;" violation of 18 U.S.C. § 241  for conspiracy against Plaintiff's rights; and violation of 18 U.S.C. § 1506 for theft or altercation of record or process and false bail. The Plaintiff also appears to allege a

violation of 42 U.S.C. § 1985 for conspiracy to interfere with civil rights and a violation of 42 U.S.C. § 1986 for neglecting to prevent deprivation of rights. There does not appear to be any suggestion that the Plaintiff is asserting any state law tort claims – rather, the Complaint declares that "[t]his is a § 1983 claim against state and local officials."[1] (Docket Entry No. 1 ¶ II(A). The County Defendants filed an Answer to Plaintiff's Complaint on August 22, 2016, denying the material allegations in the Complaint and asserting numerous affirmative defenses.

On February 24, 2017, the County Defendants filed a Motion to Extend Discovery and Dispositive Motion Deadlines due to the fact that Plaintiff had not responded to the Defendants' discovery requests. The Court granted that Motion. On March 13, 2017, when Plaintiff still had not responded to the Defendants' discovery requests, the Court issued an Order directing Plaintiff to provide responses by March 21, 2017 or face possible dismissal of his case. Having finally received Plaintiff's Interrogatory responses on March 21, 2017, the County Defendants now move for summary judgment on all counts in Plaintiff's Complaint.

## SUMMARY JUDGMENT STANDARD

According to Federal Rule of Civil Procedure 56(c), summary judgment must be granted in favor of the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In construing Rule 56(c), the United States Court of Appeals for the First Circuit has stated:

> When, as here, the movant-defendant has suggested that competent evidence to prove the case is lacking, the burden devolves upon the nonmovant-plaintiff to "document some factual disagreement sufficient to deflect *brevis* disposition."
> .....

---

[1] Since the County Defendants do not discern any state law claims in the Complaint, they have not made any arguments in this Motion concerning such claims. If the Court reads the Complaint as including tort claims, the County Defendants hereby request leave to supplement their Motion for Summary Judgment with arguments and factual materials to demonstrate that summary judgment should be granted in their favor on those claims.

> This burden is discharged only if the cited disagreement relates to a genuine issue of material fact. . . .  "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." ... This requirement has sharp teeth: the plaintiff "must present definite, competent evidence to rebut the motion."

*Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted) (cited in *Halasz v. University of New England,* 816 F. Supp. 37, 38-39 (D.Me. 1993)).

The United States Supreme Court has emphasized that the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## ARGUMENT

## I.     THE PLAINTIFF'S CLAIMS ARE SUBJECT TO SUMMARY JUDGMENT BECAUSE THEY FAIL ON THEIR MERITS.

Plaintiff asserts claims under 42 U.S.C. § 1983, apparently alleging that his federal constitutional rights were violated as a result of an arrest that occurred on November 4, 2014. The Plaintiff's Complaint refers to alleged violations of his First, Fourth, Sixth, Ninth and Fourteenth Amendment rights. (Complaint ¶ II(A)). Plaintiff asserts that he was falsely arrested for "mailing a court motion" to "a notorious unprosecuted sex offender" which resulted in an "armed kidnapping in chains at night" of Plaintiff and "a year-long prosecution which was finally dismissed for lack of merit or standing." (Complaint ¶¶ II(B)-(G)).

As noted above, the Plaintiff has produced nothing of evidentiary quality to support these rather vague allegations. Notably, he has not described any specific conduct by Mr. Reed or any other Waldo County Sheriff's deputy that caused the alleged violations. For this reason alone, the Court should grant the County Defendants summary judgment on all claims.

To the extent the County Defendants are required to rebut the unsupported allegations in the Complaint, the evidence in the summary judgment record does so. There is absolutely nothing in the record to suggest that Plaintiff was arrested, kidnapped, or otherwise detained by *anyone* on November 4, 2014. Moreover, while the crux of the allegations is that the County Defendants arrested Plaintiff without probable cause and prosecuted Plaintiff for the same, the record reflects that the only action taken by Mr. Reed with regard to the Plaintiff (which, notably, did not occur on November 14, 2014) was based on probable cause. This precludes the Plaintiff's claims under Section 1983, as well as any claims he may have asserted under 42 U.S.C. § 1985 for conspiracy to interfere with civil rights or 42 U.S.C. § 1986 for neglect to prevent deprivation of rights.  Finally, the alleged statutory violations referenced in the Complaint are not actionable, as the statutes are criminal in nature and do not create private causes of action. For these reasons, the Plaintiff's claims fail as a matter of law.

**A.    Mr. Williams' claim for false arrest fails because — even taken in the light most favorable to the Plaintiff — the circumstances were sufficient to establish probable cause.**

In distilling the Plaintiff's Complaint to its apparent essence, Plaintiff's allegations of false arrest, kidnapping and false imprisonment will be analyzed under the umbrella of a Section 1983 violation of Plaintiff's Fourth Amendment rights.[2] In order to conform to the Fourth

---

[2] The Complaint's reference to the other constitutional amendments appears to be inapposite. The Plaintiff has not explained how he claims his rights under the First, Sixth and Ninth Amendments were infringed by the conduct of Mr. Reed or any other Waldo County deputy. In any event, the Plaintiff's allegations do not begin to meet the legal standards for actionable claims.

Courts in this judicial district have held that "[s]tanding alone, the mere fact that he was arrested and imprisoned is not a violation of his First Amendment rights." *Torres-Lopez v. Olivo-Miranda*, 478 F. Supp. 2d 182, 189 (D.P.R. 2007). Therefore, even if the Plaintiff had evidence to support an alleged arrest — which he does not — such an event would not give rise to a First Amendment claim.

Since the Plaintiff has not indicated how his rights under the Sixth Amendment — which guarantees the right to a public and speedy trial of criminal charges — were violated, it is impossible to analyze this claim. Suffice it to say, there is no record evidence to suggest that there was ever an arrest, let alone a delay in the trial of criminal charges.

The Plaintiff has no claim for an alleged violation of the Ninth Amendment, as that amendment confers no substantive rights. *See Torres-Lopez*, 478 F. Supp. 2d at 190 ("Plaintiff Torres' cannot bring a

Amendment's guaranty against unreasonable seizures of the person, a police officer is required to base arrests on probable cause. *Beck* v. *Ohio*, 379 U.S. 89, 91 (1964); *Alexis v. McDonald's Rest.*, 67 F.3d 341, 349 (1st Cir. 1995). "The 'probable cause' analysis entails 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not [an assessment of] the officer's state of mind at the time the challenged action was taken.'" *Alexis*, 67 F.3d at 349 (quoting *Maryland* v. *Macon*, 472 U.S. 463, 470-71 (1985) (internal quotation marks omitted)). Probable cause exists if "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." *Rivera* v. *Murphy*, 979 F.2d 259, 263 (1st Cir. 1992). "And, moreover, though probable cause requires more than mere suspicion, it does not require the same quantum of proof as is needed to convict." *Logue v. Dore*, 103 F.3d 1040, 1044 (1st Cir. 1997) (citing *United States* v. *Aguirre*, 839 F.2d 854, 857-58 (1st Cir. 1988)).

Mr. Reed had no interaction or contact with Mr. Williams on November 4, 2014, as Plaintiff seems to suggest. In fact, Mr. Reed's only "interaction" with Mr. Williams in relation to the allegations in the Complaint was on September 9, 2014, when Mr. Reed issued a uniform summons and complaint to the Plaintiff for harassment. (Affidavit of Reed ¶¶ 4, 13).

Under Maine law, a person is guilty of harassment if, without reasonable cause, the person engages in a course of conduct with the intent to harass, torment, or threaten another person after having been notified, in writing or otherwise, not to engage in such conduct by a

---

claim under Section 1983 based on the Ninth Amendment because the Ninth Amendment does not grant any substantive rights.").

Finally, as discussed elsewhere, the Fourteenth Amendment is not implicated by a "constitutional" malicious prosecution claim (assuming such a claim even exists) in a state that affords a common law remedy for malicious prosecution. *See Meehan v. Town of Plymouth*, 167 F.3d 85, 88 (1st Cir. 1999) ("A § 1983 claim for malicious prosecution as a deprivation of procedural due process is barred where, as here, the state's tort law recognizes a malicious prosecution cause of action."); *see also Nadeau v. State*, 395 A.2d 107, 116 (Me. 1978) (discussing the elements of malicious prosecution under Maine law); *Albright v. Oliver*, 510 U.S. 266, 270 & n.4 (1994) ("substantive due process may not furnish the constitutional peg on which to hang such a 'tort.'"). Therefore, the Fourteenth Amendment affords no relief to the Plaintiff.

sheriff, deputy or police office or by a court in a protective order. 17-A M.R.S. § 506-A(1)(a). Harassment without prior convictions is a Class E crime. Maine law further provides that "[a] law enforcement officer who has probable cause to believe a crime has been or is being committed by a person may issue or have delivered a written summons to that person directing that person to appear in the appropriate trial court to answer the allegation that the person has committed the crime." 17-A M.R.S. § 15-A.

Even accepting Plaintiff's version of events, there was sufficient information known to Mr. Reed to support his decision to issue a summons to Mr. Williams for harassment. In issuing the summons on September 9, 2014, Mr. Reed had probable cause to believe that Plaintiff was engaging in harassing conduct towards Mr. and Mrs. Fishman. (Affidavit of Reed ¶ 5(a)-(e)). First, Mr. Reed was aware that Plaintiff was served a Cease Harassment Notice on September 4, 2014 pursuant to 17-A M.R.S § 506-A(1)(a) as a result of a threatening letter Mr. Williams sent to the couple. (Affidavit of Reed ¶ 5(a)). Mimicking the language in the criminal harassment statute above, the Cease Harassment Notice stated the following: "You are forbidden from engaging, without reasonable cause, in any course of conduct with the intent to harass, torment or threaten the following person: Jonathan Fishman." *Id.* The Notice is dated September 3, 2014 and was served the following day by Deputy Littlefield of the Waldo County Sheriff's Department. *Id.* Mr. Reed was aware that the Notice was in place on September 8, 2014. (Affidavit of Reed ¶ 5(b)).

In his capacity as a Deputy for the Waldo County Sheriff's Department, on September 9, 2014, Mr. Reed became aware that Mr. and Mrs. Fishman received another letter from Mr. Williams on September 8, 2014. (Affidavit of Reed ¶ 5(c)). The letter, which was addressed to "Waldo County Court, the Waldo County Sheriff and the Fishman's" stated, in essence, that Mr. Williams denies that he was engaged in harassing behavior towards the Fishmans, that he regards the Notice as fraudulent, that he only takes orders from God, and that Mr. Williams intends to "contact[ ] the Fishman's in flagrant disregard of the fraudulent notice." *Id.* Based on

7

the content of the letter, Mr. Reed had probable cause to believe that Mr. Williams sent the letter after being served the Cease Harassment Notice. (Affidavit of Reed ¶ 5).

The Cease Harassment Notice did not require a response from Mr. Williams and certainly not one addressed to the Fishmans in direct violation of that Notice. At the time of issuing the summons, Mr. Reed was not aware of any reasonable cause in existence that would require Mr. Williams to contact Mr. and Mrs. Fishman. (Affidavit of Reed ¶ 5(e)). Therefore, Mr. Reed had probable cause to believe, based on personal knowledge and reasonably trustworthy information, that Mr. Williams violated the criminal harassment statute by sending a letter to the Fishmans dated September 4, 2014 with the intent to harass and torment the couple after having been served a Cease Harassment Notice by a Deputy Sheriff earlier that same day. (Affidavit of Reed ¶ 5(a)-(e)). As such, Mr. Reed's issuance of a Uniform Summons and Complaint to Mr. Williams was based on probable cause and is not actionable under Section 1983.

Moreover, neither Mr. Reed nor any other Waldo County deputy arrested Mr. Williams based on the aforementioned violation. (Affidavit of Reed ¶ 10). In fact, Mr. Reed did not even serve Mr. Williams personally with the summons for harassment. (Affidavit of Reed ¶ 2). Rather, after preparing the summons, Mr. Reed left the summons at the Waldo County Sheriff's Department for Officer McFadden of the Belfast Police Department to pick up and serve upon Plaintiff, as Mr. McFadden had other concerns to address with Mr. Williams unrelated to this case and was already heading to Mr. Williams' house to speak with him. (Affidavit of Reed ¶ 8). According to the summons and the signature on the bottom, Mr. McFadden served the summons upon Plaintiff on September 9, 2014. (Affidavit of Reed ¶ 9).

Not only was Plaintiff not arrested for this offense, but Mr. Reed has never arrested Mr. Williams for any crime, nor has he ever detained Mr. Williams against his will. (Affidavit of Reed ¶ 10, 11). The Plaintiff presents nothing of evidentiary quality to dispel these facts – to the contrary, the Plaintiff stated under oath in his interrogatory response that he does not

remember the circumstances of being physically taken into custody because his memory "is faulty at best." (Pl's Interrog. Ans. ¶ 7). Since there is no evidence of an arrest on November 4, 2014 (or at any other time for that matter), and since the summons Mr. Reed prepared was based on probable cause, the County Defendants are entitled to summary judgment as a matter of law as to Plaintiff's alleged Section 1983 claim for unlawful arrest.

### B.  Mr. Williams' Malicious Prosecution claim against the County Defendants fails because the circumstances were sufficient to establish probable cause.

The viability of malicious prosecution as a theory of recovery under 42 U.S.C. § 1983 is far from clear. However, certain propositions appear to be reasonably settled. For example, the United States Court of Appeals for the Fifth Circuit has held that "'malicious prosecution' standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003); *accord Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir. 1996) (explaining that "a garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail"). Moreover, a plurality of the United States Supreme Court has held that "substantive due process may not furnish the constitutional peg on which to hang such a 'tort.'" *Albright v. Oliver*, 510 U.S. 266, 270 & n.4 (1994); *see also Roche*, 81 F.3d at 256 ("There is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution....") (citing *Albright*). Finally, the United States Court of Appeals for the First Circuit has consistently held that "the availability of a plainly adequate remedy under [state] law ... defeats the possibility of a procedural due process claim...." *See Perez-Ruiz* v. *Crespo-Guillen*, 25 F.3d 40, 43 (1st Cir. 1994); *Roche*, 81 F.3d at 256; *Nieves v. McSweeney*, 241 F.3d 46, 53-54 (1st Cir. 2001).

The Supreme Court has never clearly articulated a viable constitutional basis for malicious prosecution under Section 1983. Absent direction from the Supreme Court, the First Circuit has adopted a purely constitutional approach, holding that the Fourth Amendment

provides a viable basis to bring a malicious prosecution claim under Section 1983. *See Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 100 (1st Cir. 2013). The Court reasoned that "protection against seizure but upon probable cause does not end when an arrestee becomes held pursuant to legal process." *Id.* A defendant officer can thereby remain liable for a wrongfully indicted defendant's "continued, unreasonable pretrial detention." *Id.* Thus, the Court held that a Plaintiff may bring a Fourth Amendment malicious prosecution claim under Section 1983 if he can show: "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Id.* at 101 (citing *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)).

To the extent the First Circuit allows recovery for malicious prosecution claims grounded in the Fourth Amendment, such a theory would not apply in this case because Mr. Williams' claims against the County Defendants are premised entirely upon his alleged warrantless arrest without probable cause. Brought as a Fourth Amendment violation, a claim for malicious prosecution under Section 1983 is not actionable unless Plaintiff was seized and held as a pretrial detainee pursuant to legal process. *Id.* at 100. As is clearly indicated above, Mr. Williams was not arrested by Merl Reed or any other Waldo County deputy on September 9, 2014 (or November 4, 2014, as alleged in the Complaint).  (Affidavit of Reed ¶ 10). As such, no Fourth Amendment seizure occurred.  Rather, Mr. Williams received a summons that Mr. Reed reasonably believed he had probable cause to issue.  Based on the information available to Mr. Reed, a reasonable officer could believe that probable cause existed to summons Mr. Williams. In any event, since neither Mr. Reed nor any other Waldo County deputy detained Mr. Williams pursuant to legal process on September 9 or November 4, the Plaintiff has no viable malicious prosecution claim grounded in the Fourth Amendment.

Moreover, to the extent Mr. Williams bases his claim in the Fourteenth Amendment, his claim fails because Maine recognizes the tort of malicious prosecution.  *See Meehan v. Town of Plymouth*, 167 F.3d 85, 88 (1st Cir. 1999) ("A § 1983 claim for malicious prosecution as a

deprivation of procedural due process is barred where, as here, the state's tort law recognizes a malicious prosecution cause of action."); *see also Nadeau v. State*, 395 A.2d 107, 116 (Me. 1978) (discussing the elements of malicious prosecution under Maine law).  Therefore, Mr. Williams cannot premise a malicious prosecution claim upon the Due Process Clause.[3]

> ### C. Because Mr. Williams does not establish facts sufficient to support a viable claim pursuant to 42 U.S.C. § 1985, the County Defendants are entitled to summary judgment on Mr. Williams' claims arising under Sections 1985 and 1986.

The Plaintiff's claim under 42 U.S.C. § 1985 demonstrates his fundamental misunderstanding of that statute. Assuming that Plaintiff is premising his claim on the fact that the summons was prepared by Mr. Reed and then served by Mr. McFadden – leading to his alleged unlawful arrest and malicious prosecution – the only possible subsection that Mr. Williams' claim could be brought under is Section 1985(3). That part of Section 1985 "confers a private right of action for injuries occasioned when 'two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Nieves v. McSweeney*, 241 F.3d 46, 50 (1st Cir. 2001) (quoting 42 U.S.C. § 1985(3)). Moreover, courts have held that Section 1985(3) itself creates no substantive rights; it merely provides a vehicle for remedying violations of the rights enumerated in that section -- the rights, privileges, and immunities of United States citizenship." *Moran v. GTECH Corp.*, 989 F. Supp. 84, 93 (D.R.I. 1997) (citing *United Bhd. of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 832-33 (1983)).

In order to establish a viable claim, Section 1985(3) requires Plaintiff include an assertion of "'class-based, invidiously discriminatory animus.'" *Romero-Barcelo v. Hernandez-*

---

[3] Of course, after *Albright*, the Plaintiff cannot premise his malicious prosecution claim on substantive due process. *Albright v. Oliver*, 510 U.S. 266, 270 & n.4 (1994) ("substantive due process may not furnish the constitutional peg on which to hang such a 'tort.'"); *see also Roche*, 81 F.3d at 256 ("There is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution....") (citing *Albright*).

*Agosto*, 75 F.3d 23, 34 (1st Cir. 1996) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Mr. Williams has not alleged any class-based discrimination in his Complaint, and he therefore fails to state a viable claim pursuant to Section 1985. The County Defendants are entitled to summary judgment for this reason alone.

Mr. Williams' Section 1985 claim also fails on another foundational level. Courts have held that when a plaintiff fails to demonstrate that defendants violated his or her constitutional rights, the plaintiff's claim under Section 1985 that the defendants conspired to violate such rights also fails. *Pabon v. McIntosh*, 546 F. Supp. 1328, 1337 (E.D. Pa. 1982) (citing *Kauffman v. Moss*, 420 F.2d 1270 (3d Cir.), *cert. denied*, 400 U.S. 846, (1970), and *People ex rel. Snead v. Kirkland*, 462 F. Supp. 914, 922 (E.D.Pa. 1978)). Because the underlying Section 1983 claims of unlawful arrest and malicious prosecution are without merit, as discussed in detail above, Mr. Williams' Section 1985 claim also fails. As such, the County Defendants are entitled to summary judgment on Mr. Williams' Section 1985 claim.

Similarly, the County Defendants should be granted summary judgment on Mr. Williams' claims under § 1986. Section 1986 is a companion to Section 1985(3) and provides a plaintiff with a cause of action against any person who, knowing that a violation of Section 1985 is about to be committed and possessing the power to prevent its occurrence, fails to take action to frustrate its execution. *See* 42 U.S.C. § 1986. Thus, by the clear language of the statute, if a Plaintiff fails to set forth facts sufficient to establish a Section 1985(3) violation, his Section 1986 claim fails as well. Because the viability of Mr. Williams' Section 1986 claim was dependent upon the viability of his Section 1985(3) claim, his Section 1986 claim necessarily fails. The County Defendants are entitled to summary judgment as to Mr. Williams' Section 1986 claim as well.

### D. Mr. Williams' claims arising out of alleged violations of 18 U.S.C. § 241, 18 U.S.C. § 242 and 18 U.S.C. § 1506 fail because those sections provide no private rights of action.

In his Complaint, Mr. Williams asserts that the County Defendants violated his civil and constitutional rights under 18 U.S.C. § 242 by depriving him of "rights under color of law which resulted in an armed kidnapping in chains at night," under 18 U.S.C. § 241 by conspiring against his rights, and under 18 U.S.C. § 1506 for theft or alteration of record of process.  (Plaintiff's Complaint ¶ II(B)). Statutes providing criminal penalty for violation of constitutional rights do not provide private rights of action. *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (federal criminal statutes such as U.S.C. §§ 241 and 242 "do not give rise to a civil action for damages"); *see also Lozano v. Suffolk Superior Court*, No. 14-13123, 2015 U.S. Dist. LEXIS 130337, at *8 (D. Mass. Sept. 28, 2015) ("There is no private right of action for an alleged violation of 18 U.S.C. § 1506.") (citing *Shahin v. Darling*, 606 F. Supp. 2d 525, 538 (D. Del.) *aff'd*, 350 F. App'x 605 (3d Cir. 2009); *Hamilton v. Reed*, 29 Fed. App'x 202, 204 (6th Cir. 2002) (not reported)). Because Sections 241, 242 and 1506 are statutes providing for criminal penalties, the statutes do not create private rights of action. As such, Plaintiff's claims pursuant to those statutes fail and the County Defendants are entitled to summary judgment.

## II.  MR. REED IS PROTECTED FROM LIABILITY BY QUALIFIED IMMUNITY.

Even if Mr. Williams had generated factual issues with regard to the alleged constitutional violations, Mr. Reed would nonetheless be entitled to summary judgment on the basis of qualified immunity.  The doctrine of qualified immunity protects police officers from liability for civil damages under Section 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mlodzinski v. Lewis*, 648 F.3d 24, 32 (1st Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted)).  Qualified immunity affords police officers

"immunity from suit and not a mere defense to liability." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). The purpose of qualified immunity, as described by the United States Supreme Court, is to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In short, qualified immunity protects government officials for objectively reasonable decisions, even if those decisions turn out to be incorrect:

> The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

*Pearson*, 555 U.S. at 231.

The Court employs a two-prong analysis in determining whether a defendant is entitled to qualified immunity. The Court examines "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado*, 568 F.3d at 269 (citing *Pearson*, 555 U.S. at 232). The Court's second inquiry itself has two parts: The Court asks "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." *Mlodzinski*, 648 F.3d at 32-33 (citing *Decotiis v. Whittemore*, 635 F.3d 22, 36 (1st Cir. 2011)).

This inquiry is designed to determine "whether the state of the law at the time would have given a reasonably competent officer 'clear notice that what he was doing was unconstitutional.'" *Decotiis v. Whittemore*, 635 F.3d 22, 37 (1st Cir. 2011) (quoting *Costa-Urena*

*v. Segarra*, 590 F.3d 18, 29 (1st Cir. 2009)) (internal quotation mark omitted). It is an objective test: an officer is not entitled to qualified immunity *only* if "*every* 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, if "officers of reasonable competence could disagree" on the lawfulness of the action, an officer is entitled to immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Applying the test for qualified immunity articulated by the Supreme Court and the First Circuit, the Plaintiff's claims against Mr. Reed are barred by qualified immunity. As discussed above, the Plaintiff has failed to present evidence to support any viable constitutional claims against the County Defendants. Therefore, Mr. Reed is entitled to immunity.

Even if the Court moved to the second step of the qualified immunity inquiry, the analysis favors Mr. Reed. As it pertains to the unlawful arrest and malicious prosecution claims, although the right to be free from seizure and detention without probable cause is a clearly established right, a reasonable officer could have believed that Mr. Reed's actions in summonsing the Plaintiff for harassment were not unlawful. Regardless of Plaintiff's mistaken belief that his conduct was lawful and his personal opinion that the Cease Harassment Notice was fraudulent, a reasonable officer could have believed that the elements for the crime of harassment existed when Mr. Reed issued Mr. Williams a Uniform Summons and Complaint. A Cease Harassment Order had been served upon Plaintiff on September 4, 2014 because of a threatening letter sent by Mr. Williams to the Fishmans. After receiving the Notice, Mr. Williams sent a letter in response stating that he believed the Notice to be fraudulent and that he intended to contact the Fishmans "in flagrant disregard of the fraudulent notice." At the time of issuing the summons, Mr. Reed was not aware of any reasonable cause that would require Mr. Williams to respond to the notice or contact Mr. and Mrs. Fishman for any reason. Finally, as Mr. Williams promised, Mr. Williams sent a letter directly to the Fishman's home addressed in part to the Fishmans in "flagrant disregard" of the Notice. Possessing this information, a

reasonable officer could have believed that harassment had occurred. (Affidavit of Reed ¶ 5). Therefore, Mr. Reed is entitled to summary judgment on all claims in Plaintiff's Complaint because he is protected by qualified immunity.

### III.   MR. WILLIAMS HAS PRESENTED NO BASIS FOR A CIVIL RIGHTS CLAIM AGAINST WALDO COUNTY.

Mr. Williams has apparently asserted the same claims against Waldo County as he has asserted against Mr. Reed. If so, Mr. Williams' Section 1983 claims against the County fail as a matter of law.

Governmental entity liability under Section 1983 can be assessed only "where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989) (citation omitted). The United States Supreme Court has required a plaintiff to demonstrate that a policy or custom of the governmental entity led to the constitutional deprivation alleged. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694-95 (1978). The plaintiff must show both the existence of a policy or custom and a causal link between that policy and the constitutional harm. *See, e.g., City of Canton,* 489 U.S. at 387-90; *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985). Moreover, the policy or custom must be the result of acts or omissions of the municipality's policymakers that exhibit "deliberate indifference" to the rights of the municipality's inhabitants. *City of Canton*, 489 U.S. at 387-90; *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 209 (1st Cir. 1990).

As discussed above, Mr. Williams has failed to demonstrate the existence of an underlying constitutional violation. Therefore, his claims against the County fail as a matter of law. *Evans v. Avery*, 100 F.3d 1033, 1039-40 (1st Cir. 1996) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) ("we follow *Heller*'s clear rule and hold that the City cannot be held liable absent a constitutional violation by its officers").

Moreover, Mr. Williams has presented no evidence of a policy or custom of the County

that was the driving force behind the constitutional violations he alleges. With regard to the false arrest claim, Mr. Williams provides no evidence that his alleged arrest occurred at all, let alone more than once. Plaintiff's Complaint contains only one date in which he alleges he was falsely arrested: November 4, 2014. Even if the Court were to credit Plaintiff's allegation and presume for purposes of this Motion that Plaintiff was unlawfully arrested on that date and maliciously prosecuted – an assertion entirely unsupported by the record – this would be nothing more than an isolated incident. An alleged single incident is typically insufficient to establish County liability. *See St. Hilaire v. City of Laconia*, 71 F.3d 20, 29 (1st Cir. 1995) ("Evidence of a single incident is usually insufficient to establish a custom or usage.").

In addition, the record does not reflect deliberate indifference on the part of the County with regard to Mr. Williams' claims. The County's policy with regards to warrantless arrests corresponds with Maine state law. (Affidavit of Trundy ¶ 3). More specifically, deputies are trained to make warrantless arrests only upon a determination that probable cause exists to lawfully effectuate that arrest. (Affidavit of Trundy ¶ 4). In making a probable cause determination, deputies are trained consistent with state and federal law that probable cause exists if the facts and circumstances within the deputy's knowledge and of which he or she had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense. (Affidavit of Trundy ¶ 5). Furthermore, given that Mr. Williams provides no evidence that would suggest that the Sheriff was aware that the deputies were being improperly trained, that the County's policy precisely tracks state and federal law, and that the deputies are trained pursuant to that policy, Mr. Williams cannot show that the County was deliberately indifferent. *See Voutour v. Vitale*, 761 F.2d 812, 823 (1st Cir. 1985) ("The Town could only be found liable if it or the Town Manager knew or should have known that the Chief was not training his police officers properly and then failed to take reasonable measures to rectify the situation.") (citing *Languirand v. Hayden*, 717 F.2d 220, 227-28 (5th Cir. 1983). *See also Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984)

(en banc)).  The County is therefore entitled to summary judgment.

## CONCLUSION

For the reasons set forth in this Motion and incorporated memorandum of law, Mr. Reed and Waldo County are entitled to summary judgment on all claims in Plaintiff's Complaint.

Dated at Portland, Maine this 3rd day of May, 2017.

> Attorneys for Defendants Merl Reed and Waldo County
> MONAGHAN LEAHY, LLP
> 95 Exchange Street, P.O. Box 7046
> Portland, ME 04112-7046
> (207) 774-3906

BY:    /s/ John J. Wall, III
       John J. Wall, III

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2017, I electronically filed **County Defendants' Motion for Summary Judgment, With Incorporated Memorandum of Law** using the CM/ECF system, which will provide notice to me and the other counsel or parties of record: ebenjamin@dwmlaw.com; kpark@dwmlaw.com; Bradley Paul Williams (616ozpbrs@gmail.com).

Dated at Portland, Maine this 3rd day of May, 2017.

> Attorneys for Defendants Merl Reed and Waldo County
> MONAGHAN LEAHY, LLP
> 95 Exchange Street, P.O. Box 7046
> Portland, ME 04112-7046
> (207) 774-3906

BY:    /s/ John J. Wall, III
       John J. Wall, III